UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMART-TEK SERVICES, INC., <br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES INTERNAL REVENUE SERVICE,<br><br>                    Defendant. | Case No.: 15-cv-0449-BTM-JMA<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE**<br><br>**[ECF NO. 28]** |

The United States Internal Revenue Service ("IRS") has filed a motion for summary judgment as to Plaintiff's claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq. (ECF No. 28.) For the reasons discussed below, the IRS's motion will be denied without prejudice.

**I.    BACKGROUND**

This is one of five actions filed by related entities against the IRS.[1] Each case is based on the claim that the IRS failed to comply with its obligations under 5 U.S.C. § 552 to respond to FOIA requests submitted by the plaintiffs. Plaintiffs contend they submitted their requests after the IRS filed a series of liens against them between 2011 and 2013 holding them liable for payroll tax liabilities of other

---

[1] The five actions (including this one) are: Trucept, Inc., fka Smart Tek Solutions Inc. v. United States Internal Revenue Service, Case No. 15-cv-0447-BTM-JMA; Smart-Tek Services, Inc. v. United States Internal Revenue Service, Case No. 15-cv-0449-BTM-JMA; Smart-Tek Service Solutions Corp. v. United States Internal Revenue Service, Case No. 15-cv-0452-BTM-JMA; Smart-Tek Automated Services, Inc. v. United States Internal Revenue Service, Case No. 15-cv-0453-BTM-JMA; and American Marine LLC v. United States Internal Revenue Service, Case No. 15-cv-0455-BTM-JMA.

corporations under alter ego and/or successor liability theories.

Plaintiff Smart-Tek Services, Inc. ("Plaintiff") alleges it sent a written FOIA request to the IRS on May 12, 2014. Compl. (ECF No. 1) ¶ 10. Under 5 U.S.C. § 552(a)(6)(A)(i), an agency has 20 business days following receipt of a FOIA request to determine whether to comply with the request and must "immediately" notify the requester of its determination. 5 U.S.C. § 552(a)(6)(A)(i). On June 6, 2014, the IRS sent a response to Plaintiff in which it acknowledged receipt of the request but "failed to make any determination about the request." Compl. ¶ 11. On February 27, 2015, having received no further response from the IRS, Plaintiff initiated this action.

On October 7, 2016, the IRS filed the instant motion. It indicates it has now completed its search for records and released 1,743 pages in full, and 10 pages in part, of non-exempt documents responsive to Plaintiff's FOIA request. It seeks summary judgment on the ground that it has fully discharged its obligations under 5 U.S.C. § 552. Plaintiff opposes the motion. (ECF No. 33.)

**II. DISCUSSION**

A. FOIA Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. Celotex, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify specific facts which show a genuine issue for trial. Id. at 324.

District courts are directed to conduct a *de novo* review of the adequacy of an agency's response to a FOIA request. 5 U.S.C. § 552(a)(4)(B); U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989).

Because FOIA cases rarely involve material factual disputes, they "are typically and appropriately decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 97 (D.D.C. 2009); see Shannahan v. Internal Revenue Serv., 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009). Courts "follow a two-step inquiry when presented with a motion for summary judgment in a FOIA case." Shannahan, 637 F. Supp. 2d at 912.

First, the district court must determine whether the agency has established that it fully discharged its obligation under FOIA to conduct an adequate search for responsive records. Zemansky v. U.S. Envtl. Prot. Agency, 767 F.2d 569, 571 (9th Cir. 1985). To meet this burden, the agency must:

> demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." Further, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

Id. (quoting Weisberg v. U.S. Dep't of Justice ("Weisberg II"), 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

If the agency satisfies its initial burden, the court proceeds to the second step and considers "'whether the agency has proven that the information that it did not disclose falls within one of nine FOIA exemptions.'" Shannahan, 637 F. Supp. 2d at 912 (quoting Los Angeles Times Commc'ns, LLC v. Dep't of the Army, 442 F. Supp. 2d 880, 894 (C.D. Cal. 2006)). Agencies seeking to withhold documents pursuant to a FOIA exemption "have been required to supply the opposing party and the court with a 'Vaughn index,' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed

exemption." Wiener v. Fed. Bureau of Investigation, 943 F.2d 972, 977 (9th Cir. 1991); see Vaughn v. Rosen, 484 F.2d 820, 823-25 (D.C. Cir. 1973). "The purpose of a *Vaughn* index 'is … to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court the opportunity to intelligently judge the contest.'" Shannahan, 637 F. Supp. 2d at 912 (quoting Wiener, 943 F.2d at 979).

Finally, "even if the agency satisfies the two-part test, it generally must still disclose any reasonably segregable portions of the withheld documents." Id.; 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). "'The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed.'" Id. (quoting Pac. Fisheries Inc. v. United States, 539 F.3d 1143, 1148 (9th Cir. 2008).

B. Reasonableness of Search

The IRS contends it has conducted an adequate search for records responsive to Plaintiff's FOIA request. To fulfill its obligations under FOIA, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency must show "[w]hat records were searched, by whom, and through what process." Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994). An agency can meet its burden by submitting a "reasonably detailed, nonconclusory" affidavit "in good faith." Id. at 551 (quoting Weisberg II, 745 F.2d at 1485). Agency affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to allow the plaintiff to challenge the procedures utilized" are insufficient to fulfill the agency's burden. Weisberg v. U.S.

Dep't of Justice, 627 F.2d 365, 371 (D.C. Cir. 1980). In determining whether an agency has met its burden to prove an adequate search, "the facts must be viewed in the light most favorable to the requestor." Zemansky, 767 F.2d at 571 (citing Weisberg II, 745 F.2d at 1485).

The IRS submits the declaration of Delphine Thomas in support of its contention that it conducted an adequate search for records responsive to Plaintiff's FOIA request. (ECF No. 28-4.) Thomas is a Disclosure Specialist whose duties include responding to FOIA requests for IRS records, which requires her to "have knowledge of the types of documents created and maintained by the various divisions and functions of the IRS." Thomas Decl. ¶ 1. Attached to her declaration is a copy of Plaintiff's written FOIA request, which sought "a complete copy of the administrative file for the above-referenced taxpayers [*sic*] for tax forms 940, 941 and 1120 for years 2007-2014." Id. ¶ 3, Ex. A.

Thomas indicates the people initially assigned to respond to Plaintiff's FOIA request are no longer employed by the IRS as disclosure specialists and are thus "unavailable to declare in this case." Id. ¶ 2. To familiarize herself with the search conducted prior to her involvement, she reviewed the previously-assigned disclosure specialists' case notes. Id. From the case notes, she determined that on July 1, 2014, "to search for files," disclosure specialist Mary Cooper used the IRS's Integrated Data Retrieval System ("IDRS"), an electronic system that "manages data that has been retrieved from the Master File" and which is "the Service's nation-wide electronic information system and would contain any complete taxpayer account information responsive to Plaintiff's requests." Id. ¶¶ 6-8.

"From the IDRS record" Cooper "ascertained that Revenue Officer John Black (RO [Black]) was assigned to the collection matter of Smart-Tek Services." Id. ¶ 11. "[T]he Disclosure Office learned from RO Black that documents responsive to [Plaintiff's] requests would be located within the commingled files

maintained by RO Black on these entities and over twenty (20) related entities." Id. ¶ 12. Thomas states she learned that in the context of a collection action against one of the entities, RO Black realized that "all the entities were related" so he "had all the case files he identified transferred to him" and began working them as "one large case file." Id. As RO Black "received new documents, he added them to the boxes in chronological order, not based on a particular entity" so that "the files were all mixed together." Id. ¶ 13. "The total number of pages contained within the sixty-five (65) boxes is around 141,000 pages." Id.

Another disclosure specialist, Ed Pullman, thereafter confirmed with Plaintiff's representative that Plaintiff's FOIA request sought "the administrative file maintained by Collection personnel." Id. ¶ 15. Thomas, Pullman, and disclosure specialist Athena Amparano, later joined by "attorneys and law clerks in the Office of Chief Counsel," worked from August 2014 through fall 2015 to "search for responsive documents within the commingled administrative file." Id. ¶¶ 16-23. From within the 65 boxes, "I and my colleagues located … 1,753 pages of documents … responsive to Plaintiff's request." Id. ¶ 25. She concludes, "[t]o my knowledge, there are no other records responsive to Plaintiff's request." Id. ¶ 26.

Plaintiff argues Thomas's declaration is insufficient to demonstrate the adequacy of the IRS's search, because it fails to explain what documents the commingled files contained, the methodology used to review the 65 boxes of documents, criteria for selecting responsive documents, and because it does not identify the entities whose records were in the commingled file. Pl.'s Opp. at 7.

The Court agrees with Plaintiff in part. To sustain its burden, the IRS must show "[w]hat records were searched, by whom, and through what process." Sternberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994). Although a "reasonably detailed, nonconclusory" affidavit submitted "in good faith" will generally meet this burden, id. (quoting Weisberg, 745 F.2d at 1485), here, in key respects, Thomas's declaration is too conclusory to suffice.

First, the declaration provides no indication how the IRS interpreted Plaintiff's FOIA request (as initially submitted in writing, or as subsequently clarified), nor does it explain what scope of documents the IRS determined were responsive to the request. Federal agencies responding to FOIA requests are required to use search methods that can reasonably be expected to yield the requested information. Lane v. Dep't of Interior, 523 F.3d 1128, 1139 (9th Cir. 2008). Without knowing what documents the IRS was searching for in response to Plaintiff's request, the Court has no context for evaluating the reasonableness of the IRS's search methods.

Second, Thomas's declaration fails to give sufficient information describing the IRS's review of the 65 boxes of documents. The IRS spent months reviewing the boxes and removing particular documents, but it has not adequately explained what criteria the review team used to determine which documents to remove. Although an agency need only prove its search was "reasonably calculated to uncover all relevant documents," Zemansky, 767 F.2d at 571, to evaluate the adequacy of the IRS's search, the Court needs to know what the search of the 65 boxes entailed to determine whether it was reasonable. See County of Santa Cruz v. Ctrs. for Medicare and Medicaid Servs., No. C-07-2889 MMC, 2009 WL 816633, at *2 (N.D. Cal. Mar. 26, 2009) (holding IRS failed to demonstrate reasonableness of search where supporting declarations reported that searches of various files located no responsive documents, without explaining "the process used to conduct [the IRS's] search"). Thomas states the search for responsive records involved "not[ing] which documents were responsive to Plaintiff's FOIA request," Thomas Decl. ¶ 24, which does not give the Court an adequate understanding what the responsive records consisted of. See, e.g., Kean v. Nat'l Aeronautics & Space Admin., 480 F. Supp. 2d 150, 156-57 (D.D.C. 2007) (finding descriptions of searches "inadequate" where they "[did] not contain any details regarding which databases or records were searched, and what methodology or search terms were

used"). The IRS must provide additional detail regarding the search paramaters the review team used to determine what documents to remove from the 65 boxes as responsive, or potentially responsive, to Plaintiff's FOIA request.

Finally, the Court turns to Plaintiff's argument that the IRS cannot establish the reasonableness of its search without identifying the other entities whose records were in the 65-box commingled file. Opp. at 7. The IRS did not respond to this argument in its reply brief. See Reply (ECF No. 36) at 2-4.

Two countervailing principles seem to bear upon Plaintiff's contention. On the one hand, the Court must make a de novo determination of the adequacy IRS's response to Plaintiff's FOIA request, Reporters Comm. for Freedom of Press, 489 U.S. at 755, and it must be able to "intelligently judge the contest" to perform this function, Wiener, 943 F.2d at 977. On the other hand, withholding information relating to return information of another taxpayer or taxpayers, including the identity of third-party taxpayers, is authorized under 5 U.S.C. § 552(b)(3), in conjunction with 26 U.S.C. § 6103(a), and 5 U.S.C. § 552 (b)(7)(C). See Johnson v. Comm'r of Internal Revenue, 239 F. Supp. 2d 1125, 1128-29 (W.D. Wash. 2002).

Setting aside the merits of Plaintiff's argument for the moment, it seems likely that the identities of the alleged alter ego entities have already been disclosed. "[O]nce tax return information is made a part of the public domain, the taxpayer may no longer claim a right of privacy in that information" and "'§ 6103's directive to keep return information confidential is moot.'" Lampert v. United States, 854 F.2d 335, 338 (9th Cir. 1988) (quoting Figur v. United States, 662 F. Supp. 515, 517 (N.D. Cal. 1987). Bonar is Plaintiff's president, and he indicates in a declaration submitted in support of Plaintiff's opposition that Plaintiff issued its FOIA request after being served with an IRS lien based on "payroll tax liabilities of unrelated corporations." Decl. Brian Bonar ¶ 2. Presumably the alleged alter egos were identified in the IRS lien, a presumption that seems supported by Bonar's

declaration; he describes the entities as "unrelated corporations," and his characterization of the corporations as "unrelated" implies he knows who they are. Also, in researching the relevant legal issues, the Court encountered the district court's opinion in <u>Goldberg v. United States</u>, No. 13-61528-CIV, 2015 U.S. Dist. LEXIS 104815, at *3-4 n.2 (S.D. Fla. Aug. 5, 2015). The <u>Goldberg</u> litigation apparently arose from the same investigation of RO Black at issue here, and the district court's order appears to have disclosed the names of the entities involved. <u>See</u> <u>id.</u> If so, under <u>Lampert</u>, disclosing their names in this litigation would appear not to run afoul of § 6103(a).

The fact that any privilege pertaining to the identities of the alter egos may have been dispelled does not necessarily mean the identity of every entity whose files were in the 65 boxes has to be identified in order to establish the reasonableness of the IRS's search. At this stage, however, the record regarding the search the IRS undertook is not yet complete, and the Court will reserve ruling on the merits of Plaintiff's argument until the record is more fully developed.

Based on the foregoing, the Court finds the IRS has failed to carry its burden to demonstrate the adequacy of its search. Its motion for summary judgment will therefore be denied without prejudice.

C. <u>Withholding of Responsive Documents Pursuant to FOIA Exemptions</u>

The IRS indicates it withheld all or part of responsive documents pursuant to FOIA Exemptions 6 and 7(C).

Exemption 6 restricts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Pursuant to Exemption 6, the IRS has withheld all, or parts, of documents on the ground they contain information relating to "third parties" other than Plaintiff. Durrett Decl. ¶¶ 13, 14.

Exemption 7(C) requires withholding of records or information compiled for law enforcement purposes, but only to the extent the production of such

information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Here, the IRS has withheld pursuant to Exemption 7(C) documents containing information that could "lead to the identification of third parties." Durrett Decl. ¶¶ 15, 16.

At this stage, the Court will reserve ruling on the validity of the IRS's withholding of information under Exemptions 6 and 7(C). Plaintiff's essential contention in this case that the IRS's response to its FOIA request was inadequate because it failed to produce documents pertaining to alter ego entities whose tax liability was the basis for the levy against Plaintiff. The information withheld on the basis of each of the foregoing exemptions relates, in part, to unidentified third parties other than Plaintiff. Some of these third parties may be the alter egos whose documents Plaintiff seeks. The IRS disputes whether Plaintiff can obtain tax information relating to Plaintiff's alter egos without an authorization from the alter ego. Plaintiff cannot obtain such an authorization, however, without knowing which entity's records have been withheld. Although the IRS claims even the names of the alter egos are protected from disclosure, if those names have already been published such that any related privacy interest has been lost, there would appear to be no impediment to identifying, in subsequent briefing, alter ego entities whose records were withheld. If the IRS can disclose the names of the alter egos in subsequent proffers, Plaintiff will have the opportunity to more intelligently advocate for disclosure of the withheld information. Wiener, 943 F.2d at 977.

The Court will therefore reserve determining whether the IRS has sufficiently established the validity of its claims of withholding under Exemptions 6 and 7(C) until these issues are more fully developed.

//
//
//
//

10

15-cv-0449-BTM-JMA

III. **CONCLUSION AND ORDER**

For the reasons discussed above, the IRS's motion for summary judgment is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: July 5, 2017

*Barry Ted Moskowitz*
Barry Ted Moskowitz, Chief Judge
United States District Court