UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMART-TEK SERVICES, INC.,<br><br>                   Plaintiff,<br><br>v.<br><br>UNITED STATES INTERNAL REVENUE SERVICE,<br><br>                   Defendant. | Case No.: 15-cv-0449-BTM-JMA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF NOS. 44, 48]** |

The United States Internal Revenue Service ("IRS") and Plaintiff Smart-Tek Services, Inc. have filed cross-motions for summary judgment as to Plaintiff's claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq. (ECF Nos. 44, 48). For the reasons discussed below, the Plaintiff's and IRS's motions are granted in part and denied in part.

## I. **BACKGROUND**

This is one of five actions filed by related entities against the IRS.[1] Each case is based on the claim that the IRS failed to comply with its obligations under 5 U.S.C. § 552 to respond to FOIA requests submitted by the plaintiffs. Plaintiffs

---

[1] The five actions (including this one) are: *Trucept, Inc., fka Smart Tek Solutions Inc. v. United States Internal Revenue Service*, Case No. 15-cv-0447-BTM-JMA; *Smart-Tek Services, Inc. v. United States Internal Revenue Service*, Case No. 15-cv-0449-BTM-JMA; *Smart-Tek Service Solutions Corp. v. United States Internal Revenue Service*, Case No. 15-cv-0452-BTM-JMA; *Smart-Tek Automated Services, Inc. v. United States Internal Revenue Service*, Case No. 15-cv-0453-BTM-JMA; and *American Marine LLC v. United States Internal Revenue Service*, Case No. 15-cv-0455-BTM-JMA.

1

contend they submitted their requests after the IRS filed a series of liens against them between 2011 and 2013 holding them liable for payroll tax liabilities of other corporations under alter ego and/or successor liability theories.

Plaintiff Smart-Tek Services, Inc. alleges it sent a written FOIA request to the IRS on May 12, 2014. Compl. (ECF No. 1) ¶ 10. Under 5 U.S.C. § 552(a)(6)(A)(i), an agency has 20 business days following receipt of a FOIA request to determine whether to comply with the request and must "immediately" notify the requester of its determination. 5 U.S.C. § 552(a)(6)(A)(i). On June 6, 2014, the IRS sent a response to Plaintiff in which it acknowledged receipt of the request but "failed to make any determination about the request." Compl. ¶ 11. On February 27, 2015, having received no further response from the IRS, Plaintiff initiated this action.

On October 7, 2016, the IRS filed a motion for summary judgment on the ground that it had fully discharged its obligations under 5 U.S.C. § 552. It indicated it had completed its search for records and released 1,743 pages in full, and 10 pages in part, of non-exempt documents responsive to Plaintiff's FOIA request. (ECF No. 28). On July 5, 2017, this Court denied the IRS's motion for summary judgment without prejudice, explaining that the declaration of Delphine Thomas, a Disclosure Specialist, was insufficient to demonstrate the adequacy of the IRS's search because (1) it provided no indication of how the IRS interpreted Plaintiff's FOIA request and did not identify the scope of the documents the IRS determined were responsive to the request and (2) it failed to give sufficient information describing the IRS's review of 65 boxes of documents. (ECF No. 38).

The IRS has now filed a renewed motion for summary judgment. (ECF No. 48). Plaintiff has also filed a motion for summary judgment. (ECF No. 44).

//
//
//
//

//

## II. **DISCUSSION**

### A. FOIA Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify specific facts which show a genuine issue for trial. *Id.* at 324.

District courts are directed to conduct a *de novo* review of the adequacy of an agency's response to a FOIA request. 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989). Because FOIA cases rarely involve material factual disputes, they "are typically and appropriately decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 97 (D.D.C. 2009); *see Shannahan v. Internal Revenue Serv.*, 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009). Courts "follow a two-step inquiry when presented with a motion for summary judgment in a FOIA case." *Shannahan*, 637 F. Supp. 2d at 912.

First, the district court must determine whether the agency has established that it fully discharged its obligation under FOIA to conduct an adequate search for responsive records. *Zemansky v. U.S. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985). To meet this burden, the agency must:

> demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." Further, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate. The adequacy of the search, in turn, is judged by a standard

> of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

*Id.* (quoting *Weisberg v. U.S. Dep't of Justice* (*"Weisberg II"*), 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

If the agency satisfies its initial burden, the court proceeds to the second step and considers "whether the agency has proven that the information that it did not disclose falls within one of nine FOIA exemptions." *Shannahan*, 637 F. Supp. 2d at 912 (quoting *Los Angeles Times Commc'ns, LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 894 (C.D. Cal. 2006)).  Agencies seeking to withhold documents pursuant to a FOIA exemption "have been required to supply the opposing party and the court with a '*Vaughn* index,' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener v. Fed. Bureau of Investigation*, 943 F.2d 972, 977 (9th Cir. 1991); *see Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973). "The purpose of a *Vaughn* index 'is … to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court the opportunity to intelligently judge the contest.'" *Shannahan*, 637 F. Supp. 2d at 912 (quoting *Wiener*, 943 F.2d at 979).

Finally, "even if the agency satisfies the two-part test, it generally must still disclose any reasonably segregable portions of the withheld documents." *Id.*; 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Id.* (quoting *Pac. Fisheries Inc. v. United States*, 539 F.3d 1143, 1148

(9th Cir. 2008)).

## B. Reasonableness of Search

The IRS contends it has conducted an adequate search for records responsive to Plaintiff's FOIA request. To fulfill its obligations under FOIA, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency must show "[w]hat records were searched, by whom, and through what process." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). An agency can meet its burden by submitting a "reasonably detailed, nonconclusory" affidavit "in good faith." *Id.* at 551 (quoting *Weisberg II*, 745 F.2d at 1485). Agency affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to allow the plaintiff to challenge the procedures utilized" are insufficient to fulfill the agency's burden. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980). In determining whether an agency has met its burden to prove an adequate search, "the facts must be viewed in the light most favorable to the requestor." *Zemansky*, 767 F.2d at 571 (citing *Weisberg II*, 745 F.2d at 1485).

In support of its contention that it conducted an adequate search for records responsive to Plaintiff's FOIA request, the IRS submits the declarations of Delphine Thomas, Andrew Durrett, and Christopher Valvardi. (ECF No. 48-1). Thomas is a Disclosure Specialist whose duties include responding to FOIA requests for IRS records, which requires her to "have knowledge of the types of documents created and maintained by the various divisions and functions of the IRS." Thomas Decl. ¶ 1. Durrett is an attorney in the Office of Chief Counsel of the IRS whose duties "require knowledge of the types of documents created and maintained by the

5

various divisions and functions of the IRS, and an understanding of the provisions of the FOIA that exempt certain types of documents from disclosure in response to a request." Durrett Decl. ¶¶ 1-2. Valvardi is an attorney in the Office of Chief Counsel of the IRS who was assigned to replace Durrett on December 1, 2016 in connection with the FOIA lawsuit brought against the IRS in the instant action. Valvardi Decl. ¶¶ 1-2.

On June 23, 2014, the IRS received a FOIA request from Plaintiff seeking "a complete copy of the administrative file" for Plaintiff "for tax forms 940, 941, and 1120 for years 2007-2014." Thomas Decl. Exh. A. Pursuant to established practice, Disclosure Specialist Mary Cooper, who was initially assigned to Plaintiff's request, entered Plaintiff's Taxpayer Identification Number ("TIN") into the Integrated Data Retrieval Service ("IRDS"). *Id.* ¶ 9. IRDS is an electronic system that "manages data that has been retrieved from the Master File enabling [IRS] employees to take specific actions on taxpayer account issues, track status, and post transaction updates back to the Master File." *Id.* ¶ 7. The Master File System is the IRS's "nation-wide electronic information system and would contain any complete taxpayer account information responsive to Plaintiff's requests." *Id.* ¶ 8. Cooper would have entered the following codes into IRDS in conjunction with Plaintiff's TIN: BMFOLT (to retrieve all amounts, dates, and posted transactions pertaining to tax years 2007-2014), AMDIS (to retrieve a summary of all tax years and audits), and AMDISA (to determine the examination status of Plaintiff's tax years). *Id.* ¶ 9. From the IDRS record, Cooper learned that Plaintiff's collection case file was in the possession of IRS Revenue Officer John Black. *Id.* ¶ 11. The IRS construed Plaintiff's request for "administrative file" as a request for the case file maintained by the Revenue Officer assigned to Plaintiff's collection case. Thomas Supp. Decl. ¶ 5. Plaintiff has "accept[ed] the IRS's interpretation of its request as Plaintiff did indeed seek the IRS's entire collections case file of the [relevant] Revenue Officer." (ECF No. 49 at 2).

Black informed the IRS Disclosure Office that documents responsive to Plaintiff's requests were located within the commingled files maintained by Black on Plaintiff and over twenty related entities. Thomas Decl. ¶ 12. The commingled documents resulted in 65 boxes of documents, with the number of pages per box ranging from a low of 600 pages to a high of around 4000 pages. *Id.* ¶ 13. The total number of pages in the 65 boxes was around 141,000. *Id.* The 65 boxes of records were then scanned into electronic format and reviewed by Disclosure Specialists Thomas, Athena Amparano, and Ed Pullman. Thomas Supp. Decl. ¶¶ 11-13. The Disclosure Specialists conducted their review by selecting a box of scanned records and "visually searching page-by-page for information pertaining to the taxpayers whose records were sought in the various related FOIA requests, such as the taxpayer's name or employer identification number ("EIN"). *Id.* ¶ 14.

Documents containing only the Plaintiff's taxpayer return information were marked as responsive to Plaintiff's FOIA request. *Id.* ¶ 16. For documents that pertained to Plaintiff as well as other taxpayers, the Disclosure Specialists "checked the authorization for the designated representative with power of attorney ('POA') using the CFINK command code in IDRS, which researches the Central Authorization File that contains POA authorizations provided by the taxpayer." *Id.* ¶ 17. The POA authorizations search revealed that although "there was one POA with authorization for multiple taxpayers whose records were in the commingled file, each taxpayer whose records were in the commingled file had not authorized its records to be disclosed to the other taxpayers." *Id.* ¶ 18. Therefore, the Disclosure Specialists "did not consider the records which only related to other taxpayers to be responsive to [their] assigned FOIA request." *Id.* If a document contained Plaintiff's return information as well as the return information of one or more of the other FOIA requesting entities, it was marked as partially responsive to Plaintiff's FOIA request and partially responsive to each of the other FOIA requesting entities whose return information was included on the document. *Id.* ¶

1    20. If a document contained Plaintiff's return information but also the return
2    information of other taxpayers who did not submit FOIA requests, it was marked
3    as partially responsive to Plaintiff's request only. *Id.* Copies of files that were
4    determined to be responsive to Plaintiff's request were then imported into the IRS's
5    Automated Freedom of Information Act ("AFOIA") system so they could be
6    reviewed for exempt material. *Id.* ¶ 24.

Durrett and Valvardi, attorneys in the Office of Chief Counsel at the IRS, conducted the substantive review of responsive documents to determine whether certain information should be withheld based on FOIA exemptions. Durrett Decl. ¶ 7; Valvardi Decl. ¶ 2. Upon completion of the review, 1,753 pages of documents were determined to be responsive to Plaintiff's request. Durrett Decl. ¶ 9. 1,743 of those pages were released in full and 10 pages were released in part pursuant to FOIA Exemptions 6 and 7(C). *Id.*

The IRS has submitted "reasonably detailed, nonconclusory" affidavits that show "what records were searched, by whom, and through what process." *See Steinberg*, 23 F.3d at 552. The IRS's declarations indicate how the IRS interpreted Plaintiff's FOIA request and its criteria to determine which documents from the 65 boxes were responsive to Plaintiff's request. Plaintiff argues that the IRS's search was unreasonable because documents containing Plaintiff's taxpayer information were commingled with documents containing other taxpayers' information and the IRS "mark[ed] any document as non-responsive merely because it did not contain Plaintiff's taxpayer information." (ECF No. 49 at 3). However, Plaintiff only requested its own administrative file and a search of POA authorizations revealed that "each taxpayer whose records were in the commingled file had not authorized its records to be disclosed to the other taxpayers." Thomas Decl. Exh. A; Thomas Supp. Decl. ¶ 18. The IRS's search in response to Plaintiff's FOIA request was adequate.

### C. Withholding of Responsive Documents Pursuant to FOIA Exemptions

#### 1. 10 Pages No Longer Withheld

The IRS, in its initial motion for summary judgment, indicated it withheld, in part, 10 pages of responsive documents pursuant to FOIA Exemptions 6 and 7(C). The IRS does not renew its motion for summary judgment as to these potions of the records and indicates that it intends to release these records in full to Plaintiff. (ECF No. 48). Once the IRS releases in full the 10 pages responsive to Plaintiff's FOIA request, the IRS has fully discharged its obligations with respect to those pages.

#### 2. Remaining "Non-Responsive" Documents And Alter Ego Theory

Plaintiff argues that if the IRS has determined that Plaintiff and another taxpayer are alter egos, and therefore one entity, then the IRS cannot reasonably exclude the other taxpayer's documents as "non-responsive" to Plaintiff's FOIA request. (ECF No. 49 at 2). According to Plaintiff, "a reasonable search . . . require[s] the IRS to take note of which other taxpayers it is holding Plaintiff liable for and to then include those specific entities in its search." (ECF. No. 49 at 3). Plaintiff further contends that neither statute nor federal regulation bars its request because the names of alleged alter egos were already publicly disclosed in a federal tax lien, thereby authorizing disclosure of their return information and that of other unnamed taxpayers. (ECF No. 52).

The IRS asserts it need not disclose the return information of alter-ego taxpayers because (1) Plaintiff failed to request such information; (2) such a disclosure under these circumstances would violate certain statutory mandates and federal regulations; and, (3) a rule requiring disclosure upon assertion of alter ego liability contradicts how the IRS treats separate taxpayers and would lead to "absurd results." (ECF No. 50, 54). The Court agrees with the IRS in part.

Section 6103 of the Internal Revenue Code provides that returns and returns information "shall be confidential," subject to certain exemptions. 26

U.S.C. § 6103(a). "If § 6103 forbids the disclosure of material, it may not be produced in response to a request under the FOIA." *Church of Scientology of California v. I.R.S.*, 484 U.S. 9, 11 (1987). FOIA requesters are generally not entitled to information identifying another taxpayer. *See, e.g.*, *Willamette Industries, Inc. v. U.S.*, 689 F.2d 865, 867-69 (9th Cir. 1982) (treating another taxpayer's identifying information as exempt from FOIA request but requiring IRS to provide reasonable segregable portions of record); *DeSalvo v. I.R.S.*, 861 F.2d 1217 (10th Cir. 1988) ("Individuals are . . . not entitled to the tax returns or return information of others unless a specific exception within the statute applies."); *Linsteadt v. I.R.S.*, 729 F.2d 998, 1000 (5th Cir. 1984) (stating a FOIA requester "is not entitled to access to the tax return or return information of other taxpayers") (citing *Fruehauf Corp. v. I.R.S.*, 566 F.2d 574, 578 (6th Cir. 1980)).

As an initial matter, the Court finds that Plaintiff did not actually request the return information of alter ego entities. Plaintiff requested "a complete copy of the administrative file for the above-referenced taxpayers for tax forms 940, 941, and 1120 for years 2007-2014." Thomas Decl. Exh. A. The request references only Plaintiff's TIN, and attaches a POA for that number alone. *Id.* The request fails to specify that it seeks the identities and information of other taxpayers connected with Plaintiff's file. *Id.* The Court further notes that the 35 day window in which to resubmit or amend the request has since expired. *See* 26 C.F.R. § 601.702(c)(1)(i).

Even if Plaintiff had sufficiently stated the scope of its request, 26 U.S.C. § 6103 specifically protects a taxpayer's identity as confidential "return information." *See* 26 U.S.C. § 6103(a) ("Returns and return information shall be confidential . . . ."); 26 U.S.C. § (b)(2)(A) (including "a taxpayer's identity" in the definition of "return information"). "Return information" also encompasses "whether the taxpayer's return was, is being, or will be examined or subject to other investigation." 26 U.S.C. § (b)(2)(A). IRS regulations require that requests

for another taxpayer's return information, which includes their identity, be accompanied by "a properly executed power of attorney, Privacy Act consent, or tax information authorization, as appropriate." 26 C.F.R. § 601.702(c)(5)(iii)(C). Plaintiff failed to obtain such consent here, despite its receipt of a tax lien listing nineteen alleged alter egos. *See* Thomas Decl. Exh. A (absence); ECF 44-2 Bonar Decl. Exh. A.

Plaintiff's relies on *Lampert v. United States* to support its assertion that the remaining "non-responsive" documents are public information as a result of the tax lien and therefore not subject to § 6103(a)'s disclosure prohibitions. 854 F.2d 335 (9th Cir. 1988). Plaintiff's reliance is not entirely misplaced. In *Lampert*, taxpayers alleged that government press releases detailing tax evasion charges against the taxpayers constituted unauthorized disclosures of their return information under 26 U.S.C. § 6103. *Id.* at 336. The Ninth Circuit rejected the taxpayers' arguments, reasoning that that "once information is lawfully disclosed in court proceedings, '§ 6103(a)'s directive to keep return information confidential is moot.' " *Id.* at 338 (quoting *Figur v. United States*, 662 F.Supp. 515, 517 (N.D. Cal. 1987)). The Ninth Circuit held that "once return information is lawfully disclosed in a judicial forum, its subsequent disclosure by press release does not violate [the statute]." *Id.*

Plaintiff asserts that although the IRS did not disclose information during related court proceedings, the IRS "put the identity and return information at issue" by listing the names of alter ego entities in the public federal tax lien, thereby authorizing disclosure of the entire file. (ECF No. 44-1 at 10; ECF No. 52 at 3). The Court agrees in part. *Lampert* would seem to allow the IRS to confirm that the entities listed on the public federal tax lien are among those whose documents are included in the commingled file. *See* Bonar Decl. Exh. A. Although the return information was not disclosed through court proceedings specifically, the identities of Plaintiff's alter-egos have similarly been "made a part

of the public domain" through legal process and the creation of a public record. *Lampert*, 854 at 338. It therefore follows that the identities of taxpayers named in the public tax lien are no longer privileged under § 6103. *See id.* However, those taxpayers' other return information remains protected. *See generally* 26 U.S.C. § 6103(b) (enumerating other protected return information). Contrary to Plaintiff's assertions, placing other taxpayers' return information "at issue" does not entitle Plaintiff to their undisclosed, non-public information.

*Lampert* in no way supports Plaintiff's proposition that Plaintiff and its alleged alter-egos are one entity for the purposes of Plaintiff's FOIA request, thereby entitling Plaintiff to the entire file's contents. Nor does the Internal Revenue Code seem to permit such a result. The Internal Revenue Code treats taxpayers as separate entities for tax assessment purposes irrespective of whether they are designated alter egos for collection purposes. *See Portsmouth Ambulance, Inc. v. U.S.*, 756 F.3d 494, 501 (6th Cir. 2014) (reasoning "the mere application of an alter-ego appellation does not transform separate individuals or companies into a single entity"). The Court is persuaded by the IRS's argument that businesses treated as separate entities for tax assessment purposes are also separate entities for disclosure purposes. (ECF No. 50 at 7). Plaintiff proffers no case law to support its contention to the contrary, and the Court finds none. (ECF No. 49, 52).

The Court concludes with the reminder that "FOIA is not designed 'as a substitute for civil discovery.'" *Shannahan v. I.R.S.*, 672 F.3d 1142 (9th Cir. 2012) (quoting *Baldridge v. Shapiro*, 455 U.S. 345, 360 n.14 (1982)). As another District Court reasoned, if the Court were to "hold [Plaintiff] was entitled to the third-party return information [it] seeks, [the Court] would have to disclose that same information to the general public too." *Greenberger v. I.R.S.*, 283 F.Supp.3d 1354, 1372 (N.D. Ga. 2017) (citing *Forest Serv. Emps. For Envtl Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008) ("FOIA provides

12

15-cv-0449-BTM-JMA

every member of the public with equal access to public documents and, as such, information released in response to one FOIA request must be released to the public at large.")). The Court cannot so hold given the plain mandate of § 6103 and the fact that, apart from names in the federal tax lien, the return information Plaintiff seeks has not been publicly disclosed through court proceedings or otherwise. *See id.*

### III. CONCLUSION AND ORDER

For the reasons discussed above, Plaintiff's and the IRS's motions for summary judgment are GRANTED in part and denied in part. (ECF Nos. 44 and 48). The IRS shall produce the aforementioned 10 pages for which it has withdrawn its exemption. The Clerk shall enter a final judgment accordingly.

IT IS SO ORDERED.

Dated: September 25, 2018

Barry Ted Moskowitz, Chief Judge
United States District Court